IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

| | | |
|---|---|---|
| ROLAND H. VAUGHAN | * | |
| Petitioner, | * | |
| v. | * | 2:03-CV-1111-MEF |
| | | (WO) |
| D.T. MARSHALL, *et al.*, | * | |
| Respondents. | * | |

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION AND PROCEDURAL HISTORY**

Roland Vaughan ["Vaughan"], by and through counsel, filed this 28 U.S.C. § 2254 petition for habeas corpus relief on November 13, 2003. On March 15, 2002, a jury sitting before the Circuit Court for Montgomery County, Alabama, found Vaughan guilty of failing to disclose a conflict of interest, in violation of Ala. Code § 13A-10-62. The trial court sentenced Vaughan on April 30, 2002 to a term of 12 months imprisonment in the Montgomery County Detention Facility. The trial court suspended the sentence and placed Vaughan on 12 months probation. The trial court also imposed 40 hours of community service and a $2,000.00 fine.[1]

Vaughan appealed the conviction to the Alabama Court of Criminal Appeals, arguing that (1) the compensation paid to him by the State did not constitute more than 50% of his

---

[1]Execution of Vaughan's sentence was stayed pending resolution of his direct appeal.

income, and thus, under the definition of "public employee" in the Alabama ethics law, his indictment failed to charge the offense of conflict of interest; (2) his indictment was void because it failed to adequately place him on notice of the nature of the conflict of interest with which he was charged ; (3) the statute making it a criminal offense for failing to disclose a conflict of interest was unconstitutionally vague; (4) the trial court's jury instruction regarding definition of "substantial discretionary function" was misleading; and (5) the evidence was insufficient to sustain his conviction. The appellate court, in a lengthy, well-reasoned opinion, affirmed the trial court's judgment in its entirety on June 27, 2003, and Vaughan's application for rehearing was denied August 15, 2003. The Alabama Supreme Court denied Vaughan's petition for writ of certiorari on November 7, 2003. (Doc. Nos. 1, 15 Exhs. 2-5.)

In the instant application for habeas relief, Vaughan presents the following two issues for review:[2]

1. Ala. Code § 13A-10-62 is void for vagueness; and

2. The evidence was insufficient to sustain his conviction.

## II. DISCUSSION

---

[2] In his response to Respondents' answer, Vaughan disputes Respondents' contention that he puts forth five claims for federal review, stating instead, that his petition sets out only three claims, *i.e.*, that Ala. Code § 13A-10-62 is void for vagueness, the evidence was insufficient to sustain his conviction, and the indictment failed to provide adequate notice of the nature and cause of the accusation again him. (Doc. No. 16, pgs. 2-3.) In this same response, Vaughan states that he withdraws the third claim, *i.e.,* that the indictment was insufficient. (*Id*. at pg. 3.) The court, therefore, will only address Vaughan's claims that the statute under which he was indicted is void for vagueness and the evidence against him was insufficient to sustain his conviction.

*A. Exhaustion of State Remedies*

Under *Rose v. Lundy*, 455 U.S. 509, 510 (1982), before a Petitioner may seek habeas relief in federal court, he must exhaust each claim presented to the federal court by pursuing remedies available in state court. This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *O'Sullivan v. Boerckel*, 526 U. S. 838 (1999); 28 U.S.C. §2254(b) and (c). In Alabama, this may be accomplished by raising certain claims on direct appeal and by way of post-conviction proceedings. Exhaustion is not required if, at the time a federal habeas corpus petition is filed, petitioner has no available state remedy. *Teague v. Lane*, 489 U. S. 288, 297-98 (1989). Here, Vaughan raised all his current arguments in the state court and, therefore, exhausted his state court remedies for the purposes of federal habeas review.

*B. Disposition of Claims*

In their answer, Respondents maintain that Vaughan's claims were properly adjudicated on the merits by the state courts. *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). Petitioner filed a response to the answer of Respondents. (Doc. No. 16.) Upon review of the § 2254 petition, the answer of Respondents, and Vaughan's response, the court concludes that no evidentiary hearing is required and that the petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

*C. Standard of Review*

To prevail on his § 2254 claims, Vaughan must show that a decision by the Alabama state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1) & (2);[3] *see Williams*, 529 U.S. at 412-13. A state court's decision can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Id*. at 405-06. A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Id*. at 407. "Federal habeas relief is available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively

---

[3] 28 U.S.C. § 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1)   resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or

(2)   resulted in a decision based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceedings.

unreasonable.'" *Parker v. Head*, 244 F.3d 831 (11th Cir. 2001) (*citing Williams*, 529 U.S. at 409). It is the objective reasonableness, not the correctness *per se*, of the state court decision that this court must decide. *See Williams*, 529 U.S. at 411. A responsible, thoughtful decision that is made after a full opportunity to litigate suffices, "even if it is wrong." *Lindh v. Murphy*, 96 F.3d 856, 876-77 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997). Further, a state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "However, the statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact." *Parker*, 244 F.3d at 835 (*citing McBride v. Sharpe*, 25 F.3d 962, 971 (11th Cir. 1994)).

*D. The Void for Vagueness Claim*

Vaughan argues that Ala. Code § 13A-10-62 is unconstitutionally vague because (1) the term "substantial discretionary authority" is not defined in the Code and (2) it fails to provide the kind of notice that enables ordinary people to understand what conduct it prohibits. Under § 13A-10-62(a), a public servant commits the crime of failing to disclose a conflict of interest "if he exercises any substantial discretionary function in connection with a government contract, purchase, payment or other pecuniary transaction without advance public disclosure of a known potential conflicting interest in the transaction." "A 'potential conflicting interest' exists, but is not limited to, when the public servant is a director,

-5-

president, general manager or similar executive officer, or owns directly or indirectly a substantial portion of any non-governmental entity participating in the transaction." Ala. Code § 13A-10-62 (b). "Public disclosure includes public announcement or notification to a superior officer or the Attorney General." Ala. Code § 13A-10-62 (c).

During Vaughan's appeal, the Alabama Court of Criminal Appeals found that Ala. Code § 13A-10-62 was not unconstitutionally vague. Vaughan now argues that the appellate court's decision was incorrect because the Supreme Court of the United States has clearly established the void for vagueness doctrine, and the state court's decision was "contrary to, or involved an unreasonable application of" that doctrine.

A review of the Alabama Court of Criminal Appeals' decision demonstrates that the appellate court applied the correct law as established by the United States Supreme Court and that its decision was not "contrary to" or "an unreasonable application" of that law. The Alabama Court of Criminal Appeals stated in its opinion:[4]

> "'The doctrine of vagueness ... originates in the due process clause of the Fourteenth Amendment, *see Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939), and is the basis for striking down legislation which contains insufficient warning of what conduct is unlawful, *see United States v. National Dairy Products Corporation,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963).
>
> " 'Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand

---

[4]In its opinion, the Alabama Court of Criminal Appeals spelled Petitioner's name "Vaughn." For purposes of this opinion, when not quoting the decision of the appellate court, the undersigned uses the spelling of Petitioner's name as it is reflected in the pleadings before the court, *i.e.* "Vaughan."

that his contemplated conduct is proscribed. *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989, 996 (1954). A vague statute does not give adequate "notice of the required conduct to one who would avoid its penalties," *Boyce Motor Lines v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367, 371 (195[2] ), is not "sufficiently focused to forewarn of both its reach and coverage," *United States v. National Dairy Products Corporation,* 372 U.S. at 33, 83 S.Ct. at 598, 9 L.Ed.2d at 566, and "may trap the innocent by not providing fair warning," *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227-28 (1972).

" 'As the United States Supreme Court observed in *Winters v. New York,* 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948):

> """There must be ascertainable standards of guilt. Men of common intelligence cannot be required to guess at the meaning of the enactment. The vagueness may be from uncertainty in regard to persons within the scope of the act, or in regard to the applicable tests to ascertain guilt."
>
> "'333 U.S. at 515-16, 68 S.Ct. at 670, 92 [L.Ed. at] 849-50    [citations omitted].'

"*McCrary v. State,* 429 So.2d 1121, 1123-24 (Ala.Cr.App.1982), *cert. denied,* 464 U.S. 913, 104 S.Ct. 273, 78 L.Ed.2d 254 (1983)."

*McCall v. State,* 565 So.2d 1163, 1165 (Ala.Crim.App.1990).

> "' "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352 [357], 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted). A statute challenged for vagueness must therefore be scrutinized to determine whether it provides both fair notice to the public that certain conduct is proscribed and minimal guidelines to aid officials in the enforcement of that

-7-

> proscription. See *Kolender,* supra; *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).'"

*Timmons v. City of Montgomery,* 641 So.2d 1263, 1264 (Ala.Crim.App.1993), quoting *McCorkle v. State,* 446 So.2d 684, 685 (Ala.Crim.App.1983). However,

> "'"[t]his prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for '[i]n most English words and phrases there lurk uncertainties.' *Robinson v. United States,* 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945). Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid."'"

*Sterling v. State,* 701 So.2d 71, 73 (Ala.Crim.App.1997), quoting *Culbreath v. State,* 667 So.2d 156, 158 (Ala.Crim.App.1995), abrogated on other grounds by *Hayes v. State,* 717 So.2d 30 (Ala.Crim.App.1997), quoting in turn, *Rose v. Locke,* 423 U.S. 48, 49-50, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975).

"'Mere difficulty of ascertaining its meaning or the fact that it is susceptible of different interpretations will not render a statute or ordinance too vague or uncertain to be enforced.'" *Scott & Scott, Inc. v. City of Mountain Brook,* 844 So.2d 577, 589 (Ala.2002), quoting *City of Birmingham v. Samford,* 274 Ala. 367, 372, 149 So.2d 271, 275 (1963). The judicial power to declare a statute void for vagueness "should be exercised only when a statute is so incomplete, so irreconcilably conflicting, or so vague or indefinite, that it cannot be executed, and the court is unable, by the application of known and accepted rules of construction, to determine, with any reasonable degree of certainty, what the legislature intended." *Jansen v. State ex rel. Downing,* 273 Ala. 166, 170, 137 So.2d 47, 50 (1962).

Contrary to Vaughn's contention, as noted in Part I.A. of this opinion, § 13A-10-62 clearly governs conduct by public servants, and the term public servant is plainly and unambiguously defined in §§ 13A-10-60(b)(3) and 13A-10-1(7), Ala.Code 1975. In addition, although the term "substantial discretionary function" is not specifically defined in the criminal code, we do not find this to be fatal. See, e.g., *State v. Randall,* 669 So.2d 223, 226 (Ala. Crim. App. 1995) (holding that Alabama's stalking law, § 13A-6-90 et seq., Ala.Code

1975, was not void for vagueness, even though the terms "repeatedly" and "series" were not specifically defined); *Musgrove v. State,* 519 So.2d 565, 582-83 (Ala. Crim. App.), aff'd, 519 So.2d 586 (Ala. 1986)(holding that the kidnapping statute, § 13A-6-43, Ala.Code 1975, was not void for vagueness, even though the term "terrorize" was not specifically defined); and *Farris v. State,* 432 So.2d 538, 539-40 (Ala. Crim. App. 1983) (holding that § 13A-7-44, Ala.Code 1975, criminal possession of explosives, was not void for vagueness, even though the term "explosives" was not specifically defined). Compare *McCorkle,* 446 So.2d at 685 (holding that § 13A-14-1, Ala.Code 1975, was unconstitutionally vague because it failed to define the term "legal duty" which, the Court said, had "several established meanings").

"It is well accepted that a court, in interpreting a statute, will give words used therein their '"natural, plain, ordinary, and commonly understood meaning."'" *State v. Randall,* 669 So.2d at 226, quoting *Ex parte Etowah County Board of Education,* 584 So.2d 528, 530 (Ala. 1991).

> "'Although penal statutes are to be strictly construed, courts are not required to abandon common sense. Absent any indication to the contrary, the words must be given their ordinary and normal meaning.'"

*Musgrove,* 519 So.2d at 582, quoting *Walker v. State,* 428 So.2d 139, 141 (Ala. Crim. App. 1982).

The commentary to § 13A-10-62 provides, in part: "The public servant must be in a position to 'exercise any substantial discretionary function,' *e.g.,* approve a contract, negotiate the terms, etc." This is the only indication in the Code of the scope of the term substantial discretionary function and this list of examples is clearly not exhaustive. Thus, we must look to the ordinary and common meaning of the terms. "Discretionary function" or "discretionary act" is defined in *Black's Law Dictionary* 467 (6th ed.1996), as "[t]hose acts wherein there is no hard and fast rule as to [the] course of conduct that one must or must not take" and "[o]ne which requires exercise in judgment and choice and involves what is just and proper under the circumstances." [FN9] "Substantial" is defined in *Black's Law Dictionary* 1428 (6th ed. 1996), as "[o]f real worth and importance; of considerable value; valuable ⋯ [s]omething worthwhile as distinguished from something without value or merely nominal" and as being "[s]ynonymous with material." The trial court instructed the jury on these commonly understood definitions in its oral charge.[FN10]

> FN9. This term is defined in *Black's Law Dictionary* 479 (7th ed.1999), as "[a] deed involving an exercise of personal judgment and conscience."
>
> FN10. See Part III of this opinion.
>
> When the ordinary and common meaning of the term "substantial discretionary function" is applied to this statute as well as the definitions of "public servant" and "potential conflicting interest," it is clear that § 13A-10-62 governs the conduct of any person acting as an advisor or consultant to the government in performing a governmental function and that it prohibits any such person who is exercising his or her judgment and choice on a matter material to any government contract, purchase, payment, or other pecuniary transaction from owning directly or indirectly a substantial portion of any non-governmental entity involved in that government contract, purchase, payment, or pecuniary transaction.
>
> Section 13A-10-62 defines the offense of failing to disclose a conflict of interest with sufficient definitiveness that ordinary people are provided fair warning of what conduct is prohibited and who falls within the scope of the statute. Therefore, we hold that § 13A-10-62 is not unconstitutionally void as being vague.

(Doc. No. 15, Exh. 4 at pgs. 38-45.)

In this case, Vaughan has failed to demonstrate how the state court's decision constituted an unreasonable application of Supreme Court law. He argues that §13A-10-62 is so vague as to prevent people of ordinary intelligence from knowing what actions are legal and which are illegal. The Alabama Court of Criminal Appeals, however, determined that the statute in question clearly governs conduct by public servants, as such term is plainly and unambiguously defined in § 13A-10-60(b)(3) and § 13A-10-1(7), and that while the term "substantial discretionary function" is not specifically defined in the Alabama criminal code, when the ordinary and common meaning of "substantial discretionary function" is applied

to the statute along with the definitions of "public servant" and "potential conflicting interest," § 13A-10-62 is not so vague that a person of common intelligence would not be on fair notice of what conduct is prohibited. Thus, despite Vaughan's arguments to the contrary, the court agrees with the state court that the term "substantial discretionary function" is not so vague as to make this statute unconstitutional.

In this situation, Vaughan has failed to establish, and this court cannot find, that the Alabama Court of Criminal Appeals' decision was contrary to, or involved an unreasonable application of clearly established Supreme Court law. The Alabama Court of Criminal Appeals cited the correct legal standards for the void for vagueness doctrine as established by the Supreme Court and its application of those standards was not unreasonable. Accordingly, Vaughan is not entitled to habeas corpus relief on his void for vagueness claim.

*E. The Sufficiency of the Evidence Claim.*

Vaughan's second argument is that the State produced insufficient evidence to sustain his conviction for failing to disclose a conflict of interest. He maintains that there was no substantial evidence tending to prove all the elements of the offense charged and that the evidence in the case was so lacking that no rational trier of fact could have concluded beyond a reasonable doubt that the State had proven every element of the offense. As a result, Vaughan now argues that the state court's conclusion that the evidence was sufficient to sustain his conviction was incorrect because the Supreme Court has clearly established the legal standard for assessing such claims and the state court's decision was "contrary to, or involved an unreasonable application of" this precedent and constituted "an unreasonable

-11-

determination of the facts in light of the evidence presented in the State court proceeding."

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship,* 397 U.S. 358, 364 (1970). Under § 2254 , habeas relief on a claim of insufficient evidence is appropriate only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *see also Lewis v. Jeffers*, 497 U.S. 764, 781 (1990).

> But this inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." ... [I]nstead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson,* 443 U.S. at 318-319. Sufficiency claims are judged by the elements defined by state law. *Id.* at 324 n.16.

The Alabama Court of Criminal Appeals conducted a thorough analysis of the evidence in the record and concluded that there was sufficient proof of guilt of each of the elements of failing to disclose a conflict of interest. The appellate court stated in its opinion:

> "'In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" *Ballenger v. State,* 720 So.2d 1033, 1034 (Ala. Crim. App.1998), quoting *Faircloth v. State,* 471 So.2d 485, 488 (Ala. Crim. App.1984), aff'd, 471 So.2d 493 (Ala.1985). "'The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable

doubt.'" *Nunn v. State,* 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting *O'Neal v. State,* 602 So.2d 462, 464 (Ala.Crim.App.1992). "'When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'" *Farrior v. State,* 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting *Ward v. State,* 557 So.2d 848, 850 (Ala.Crim.App.1990). "The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is *legally* sufficient to allow submission of an issue for decision [by] the jury." *Ex parte Bankston,* 358 So.2d 1040, 1042 (Ala.1978).

Moreover, any "inconsistencies and contradictions in the State's evidence, as well as [any] conflict between the State's evidence and that offered by the appellant, [goes] to the weight of the evidence and [creates a question] of fact to be resolved by the jury." *Rowell v. State,* 647 So.2d 67, 69-70 (Ala. Crim. App.1994). "'"[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine."'" *Johnson v. State,* 555 So.2d 818, 820 (Ala.Crim.App.1989), quoting *Harris v. State,* 513 So.2d 79, 81 (Ala.Crim.App.1987), quoting in turn *Byrd v. State,* 24 Ala.App. 451, 451, 136 So. 431, 431 (1931). "We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial." *Johnson,* 555 So.2d at 820. "'When the jury has passed on the credibility of evidence tending to establish the defendant's guilt, this Court cannot disturb its finding.'" *Rowell,* 647 So.2d at 69, quoting *Collins v. State,* 412 So.2d 845, 846 (Ala. Crim. App.1982). Furthermore, "'[t]his Court must view the evidence in the light most favorable to the State, and "draw all reasonable inferences and resolve all credibility choices in favor of the trier of fact."'" *D.L. v. State,* 625 So.2d 1201, 1204, (Ala. Crim. App.1993), quoting *Woodberry v. State,* 497 So.2d 587, 590 (Ala. Crim. App. 1986).

To establish the offense of failing to disclose a conflict of interest under § 13A-10-62, the State was required to prove the following three elements: (1) that Vaughn was a public servant; (2) that Vaughn exercised a substantial discretionary function in connection with a government contract, purchase, payment, or other pecuniary transaction; and (3) that Vaughn failed to provide public disclosure of a known potential conflicting interest.

Vaughn makes three specific contentions. First, Vaughn contends that the State failed to prove that he was a public servant because, he says, the State failed to prove that the compensation he received from the State of Alabama for the comparative site analysis constituted more than 50% of his income. However,

-13-

as noted in Part I.A. of this opinion, whether the compensation paid to Vaughn for the analysis constituted more than 50% of his income was not an element of the offense of failing to disclose a conflict of interest under § 13A-10-62; thus, the State did not have to prove that he received more than 50% of his income from his fee for performing the comparative site analysis. "Public servant" is defined in § 13A-10-1(7), Ala.Code 1975, as "[a]ny officer or employee of government, including legislators and judges <u>and any person or agency participating as an advisor, consultant or otherwise in performing a governmental function</u>." (Emphasis added.) The evidence was undisputed that Vaughn was hired as a consultant to conduct a comparative site analysis for the State of Alabama; thus, he clearly fell within the definition of a "public servant." FN14

> FN14. In fact, Vaughn does not dispute that he falls within the definition of "public servant" in § 13A-10-1(7); his only argument is that he does not also fall within the definition of "public employee" in § 36-25-1(23), Ala.Code 1975.

Second, Vaughn contends that the State failed to prove that he exercised a substantial discretionary function because, he says, the analysis he submitted to the State recommending the Ripley Street property for the warehouse project was actually a collaborative recommendation by him and the two agency heads - Randall Smith of the ABC Board and Shane Bailey of ADECA - and that he never had any discretion in what site to recommend because Smith and Bailey had already determined that the Ripley Street property was the only site they wanted for the project.

The evidence showed that Vaughn was hired to perform a comparative site analysis of three potential sites for the State of Alabama and to recommend a site based on that analysis for the State of Alabama to purchase in order to build a warehouse facility for the ABC Board and ADECA. Although Garver testified that Vaughn had no discretion in which property to recommend by the time he submitted his reports in October and December 2000 because, Garver said, the decision had been made in July 2000 when Smith indicated that he was not interested in the west Montgomery property and Bailey indicated that he was not interested in the DYS property, both Bailey and Smith refuted Garver's testimony. Bailey testified that both he and Smith were interested in the DYS property and that they both thought that the DYS property was a good prospect. In addition, both Bailey and Smith testified that no decision had been made in the summer of 2000. Smith testified that, although the group was "beginning to lean toward" the Ripley Street property in the summer of 2000,

-14-

the decision had not actually been made and the other properties had not been excluded from consideration. (R. 387.) In addition, Bailey specifically testified that it was not until after "the analysis was complete and we were going to compare the three sites and try to make a decision" that the State decided to focus on the Ripley Street property. (R. 364.)

As noted above, conflicting evidence is for the jury to resolve, not for this Court. Based on the testimony presented at trial, the jury could have reasonably concluded that Vaughn's analysis and recommendation was not the result of Bailey and Smith's deciding that the Ripley Street property was the only alternative, but was, in fact, Vaughn's recommendation based on the exercise of his own judgment and choice and on what he felt was just and proper under the circumstances, i.e., a discretionary act. Although there is no doubt that input from Smith and Bailey regarding the needs of the ABC Board and ADECA was of paramount importance in the analysis and recommendation, there was evidence - specifically, Smith and Bailey's testimony - from which the jury could have concluded that it was Vaughn, and not Smith and Bailey, who made the ultimate decision as to which property to recommend to the State. In addition, the jury could have concluded from the evidence that Vaughn's analysis and recommendation was of value and importance and was material to the State's ultimate decision with respect to the three parcels of property, *i.e*., that it was substantial. Therefore, we find that there was sufficient evidence presented at trial from which the jury could have reasonably concluded that Vaughn exercised a substantial discretionary function when doing the comparative site analysis and recommendation.

Finally, Vaughn contends that the State failed to prove that he had a known potential conflicting interest because, he says, even assuming that the site analysis constituted a substantial discretionary function, he did not acquire any interest in C & H investments until "well after the property had been selected and after the State of Alabama had decided not to purchase the property." (Vaughn's brief at p. 44.) Vaughn's argument in this regard is based on his testimony at trial and Nolin's testimony at trial that he did not purchase his 50% of C & H Investments until December 11, 2000, after the State realized in November that it did not have the funds to purchase the property and only four days before his final analysis was submitted to the State on December 15, 2000.

Although Vaughn and Nolin testified that Vaughn did not acquire any interest in C & H Investments until December 11, 2000, Terry Wilson, who drew up the bill of sale, testified that the bill of sale was executed within "a couple of

-15-

weeks" of the formation of C & H Investments, i.e., sometime in mid-September 2000. (R. 222.) If the jury believed this testimony as well as the testimony of Bailey that no final decision was to be made regarding the Ripley Street property until after Vaughn's analysis and recommendation was submitted to the State, it could have reasonably concluded that Vaughn "own[ed] directly or indirectly a substantial portion of [a] nongovernmental entity participating in the transaction," *i.e*., that he had a known potential conflicting interest. § 13A-10-62(b), Ala.Code 1975.[FN15]

> FN15. In addition, Vaughn does not dispute that he did not make a "public announcement or notification to a superior officer or the Attorney General" regarding his interest in C & H Investments. § 13A-10-62(c), Ala.Code 1975.

> Therefore, viewing the evidence in the light most favorable to the State and resolving all credibility choices in favor of the jury's verdict, as we must, we conclude that there was sufficient evidence from which the jury could have reasonably concluded that Vaughn was a public servant who exercised a substantial discretionary function and who did not disclose a known potential conflicting interest.

(Doc. No. 15, Exh. 4 at pgs. 51-59.)

The court finds the Alabama Court of Criminal Appeals' well-reasoned disposition of Vaughan's sufficiency claim was neither contrary to nor or an unreasonable application of clearly established federal law. Moreover, the state court properly adjudicated this claim based on a reasonable determination of the facts in light of the evidence presented at trial. *See* 28 U.S.C. § 2254(d)(2). The appellate court cited case law that plainly incorporated the *Jackson* standard and explained and supported its conclusion that a rational trier of fact could have found Vaughan guilty beyond a reasonable doubt of failing to disclose a conflict of interest in violation of Ala. Code § 13A-10-62. Therefore, Vaughan is entitled to no relief on this claim.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Roland Vaughan be DENIED and that this case be DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before April 12, 2006. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 31st day of March, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE
